UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

ERICA M. BOWERS                          CIVIL ACTION NO. 10-cv-1274

VERSUS                                   JUDGE HICKS

LOUISIANA CORRECTIONAL                   MAGISTRATE JUDGE HORNSBY
INSTITUTE FOR WOMEN

## REPORT AND RECOMMENDATION

**Introduction**

Erica Bowers ("Petitioner") was charged with manslaughter and hit and run driving. She elected a bench trial before Caddo Parish District Judge Ramona Emanuel, who found Petitioner guilty on both counts. Petitioner was then charged as a fourth-felony habitual offender, and the court issued an enhanced sentence of 47 years on the manslaughter charge, and a concurrent five years on the hit and run.

The convictions and sentences were affirmed on direct appeal. State v. Bowers, 965 So.2d 959 (La. App. 2d Cir. 2007), writ denied, 977 So.2d 929 (La. 2008). Petitioner also pursued a state post-conviction application. She now seeks federal habeas corpus relief on 11 grounds including sufficiency of the evidence, speedy trial, the habitual offender adjudication, denial of free trial transcripts, and admission of the autopsy report and related testimony.

The district attorney filed a copy of the 3,224 page state court record and fully briefed the merits of the several claims, complete with record references. The court is extremely

grateful for the time and attention paid to the merits, but they need not be reached; the timeliness defense raised by the State requires dismissal of the petition. It was filed two days late.

**Relevant Facts**

Petitioner and Rhonda Mosley drove to the Kroger grocery store on Mansfield Road in Shreveport.  Petitioner had a stolen checkbook, and the car they were driving had a stolen license plate.  Petitioner went into the store.  Mosley waited in the car, parked in the fire lane just outside the main entrance.

Petitioner loaded a shopping cart with baby formula, Huggies diapers, and other items. She went to the checkout area, but the cooperative cashier to whom she planned to pass a stolen check was not working. Petitioner simply pushed her cart out the door.

The store manager and other employees tried to stop Petitioner, who cursed them and said she was not paying for the items.  She pushed the cart toward the manager, opened the driver's door of the car, and started to get in as the car moved forward.  Witnesses said Petitioner moved Mosley over and got behind the wheel, but with both women on the driver's side.

Daniel Maguire, a 74-year-old courtesy clerk, was gathering shopping carts in the parking lot and had not been involved in the confrontation.  Maguire did not see Petitioner's car coming until it was too late, and the car ran over him and broke his left leg in two places. Two witnesses testified that the car first knocked Maguire down, paused, and then ran over

him fast with all four wheels.  Witnesses also said Petitioner looked back after the car ran over Maguire, then zigzagged out of the parking lot and sped away.

Witnesses wrote down the number of the stolen license plate, which police were able to use to develop Petitioner as a suspect.  Witnesses identified her from a photo lineup.  A detective found Petitioner in a Texas jail, where she waived her Miranda rights and admitted most of the key events, but insisted that Mosley was driving when the car hit Maguire.

Mr. Maguire, unfortunately, died 42 hours after being admitted to the hospital.  The coroner listed the cause of death as acute myocardial ischemia.  But he noted that the leg injuries, though not life threatening, combined with Maguire's preexisting heart disease to cause the death, which he classified as a homicide.

**Timeliness Calculations**

A one-year period of limitations applies to petitions for habeas corpus.  In an ordinary case, such as this one, the limitation period runs from the date on which the state court judgment of conviction "became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).  The first task, then, is to determine the date on which Petitioner's conviction became final after direct review.

Petitioner challenged her conviction on direct appeal to the intermediate appellate court and then filed an application for a discretionary writ to the Supreme Court of Louisiana, which denied the application on March 14, 2008. Tr. 1966.  Petitioner did not file a petition for certiorari to the United States Supreme Court.  In these circumstances, Petitioner's conviction is deemed final and commences the running of the federal limitations period when

the 90-day period for filing a petition for certiorari to the Supreme Court expires.  <u>Foreman v. Dretke</u>, 383 F.3d 336, 338 (5th Cir. 2004);  <u>Ott v. Johnson</u>, 192 F.3d 510, 513 (5th Cir.1999).  Thus, Petitioner's conviction became final for federal habeas purposes 90 days after the Supreme Court of Louisiana denied writs on March 14, 2008.  That date is Thursday, June 12, 2008.

The federal limitations clock began to tick on June 12, 2008, and it ran until Petitioner filed in the state court an application for post-conviction relief.   28 U.S.C. § 2244(d)(2) (a properly filed post-conviction application tolls the federal limitations period).  All time that passed during the interim between finality of the conviction and the filing of the post-conviction application is counted against the one-year period. <u>Flanagan v. Johnson</u>, 154 F.3d 196, 199 n. 1 (5th Cir. 1998). The filing of the post-conviction application does not delay or restart the one-year period. Its effect is that the time during which it is pending is excluded from the one-year calculation. <u>See</u> <u>Salinas v. Dretke</u>, 354 F.3d 425, 428 (5th Cir. 2004).

A Louisiana prisoner's pro se post-conviction application is deemed "filed" when she delivers it to prison authorities for forwarding to the court.  <u>LeBeuf v. Cooper</u>, 2007 WL 1010296 (5th Cir. 2007) ("We have extended the mailbox rule to determine the filing dates for Louisiana postconviction relief PCR applications."), citing <u>Causey v. Cain</u>, 450 F.3d 601, 605-06 (5th Cir. 2006).  Petitioner's post-conviction application is stamped filed on October 30, 2008. The application is signed in two places with the date October 17, 2008. The court will grant Petitioner the benefit of any doubt and consider the application to have been

tendered to prison officials and, therefore, filed the same day it was signed, October 17, 2008. That filing tolled the federal clock after 127 of the available 365 days.

Petitioner's post-conviction application was denied by the state courts at all levels. The final step was when the Supreme Court of Louisiana denied an application for a discretionary writ on November 25, 2009. Tr. 3221. The Supreme Court has held that filing a petition for certiorari after the state's high court denies a post-conviction application does *not* continue the tolling effect of the application. Lawrence v. Florida, 127 S.Ct. 1079 (2007). The Fifth Circuit had already held that the 90 days during which a state habeas petitioner might petition the United States Supreme Court (if, as in this case, no petition were filed) is not included in determining the time that a post-conviction application tolls the federal limitations period. Ott v. Johnson, 192 F.3d at 512. Lawrence reinforces that holding. The 90-day certiorari period is counted when determining when a conviction is final (as discussed above), but differences in statutory language, as discussed in Lawrence, exclude the 90-day period from the time tolled by the pendency of a post-conviction application.

Thus, with 127 days already expired, the federal clock began to run again on November 25, 2009 when the Supreme Court of Louisiana denied an application for a discretionary writ with respect to the post-conviction application. Petitioner had 238 days – until Wednesday, July 21, 2010 – to file her federal petition. The federal clerk of court received the habeas petition on July 28, 2010, but the federal petition also benefits from a prisoner mailbox rule that deems it filed when the prisoner tenders it to prison officials for

mailing to the district court.  <u>Spotville v. Cain</u>, 149 F.3d 374 (5th Cir. 1998).  The envelope bears a postage-meter stamped date of July 23, 2010, and Petitioner signed and dated her petition, memorandum, and cover letter with that same July 23, 2010. The court will give her the benefit of all doubt and assume the petition was filed on the day it was signed, July 23, 2010.

A total of 240  days passed between the cessation of tolling on November 25, 2009 and the filing of the federal petition on July 23, 2010.  When those days are added to the 127 days that expired earlier, a total of 367 un-tolled days passed between the finality of Petitioner's conviction and the filing of her federal habeas petition.  Thus, the federal petition was filed, at the earliest, two days after the federal limitations period expired. It was untimely.

**Statutory or Equitable Tolling**

The State squarely raised the timeliness defense in its brief and set forth the above calculations.  Petitioner filed a reply in which she cited the relevant dates of the writ denials and her filings, all of which are in agreement with the dates set forth above.  Petitioner offered only a single sentence regarding timeliness: "Petitioner is relying on the case of <u>Ott</u> for her 90 days grace period of tolling."  Her petition includes a similar statement.  The court has, however, already allowed 90 days of tolling following the Supreme Court of Louisiana's writ denial on direct appeal.  As explained above, <u>Ott</u> states that the 90-day period for applying for certiorari after direct appeal does toll the limitations, but the 90-day period after the completion of post-conviction proceedings does not have any tolling effect.  Petitioner

has received the full benefit of <u>Ott</u> in the above calculations, but her federal petition is nonetheless untimely.

Petitioner's memorandum, under the heading Standard of Review, discusses the standard but goes on to mention the exhaustion requirement and devotes a single paragraph to the doctrine of equitable tolling.  The paragraph does not specifically invoke tolling, it merely describes the doctrine, and it does not set forth any facts that would purportedly warrant equitable tolling in this case.

Section 2244(d) "is subject to equitable tolling in appropriate cases."  <u>Holland v. Florida</u>, 130 S.Ct. 2549, 2560 (2010).  Such a case exists only if the petitioner shows that (1) she has been pursuing her rights with "reasonable diligence" and (2) some extraordinary circumstance stood in his way and prevented timely filing.  <u>Id</u>. at 2562.  The prisoner in <u>Holland</u> was represented by counsel who failed to file a timely federal petition despite the prisoner writing many letters that repeatedly emphasized the correct deadline for filing. The attorney did no research to find the proper filing date, grossly miscalculated the filing date, and failed to timely inform the prisoner about the crucial fact that the state supreme court had decided the post-conviction application, all despite the prisoner's many pleas for that information.  On the very day the prisoner discovered that his attorney had let the federal clock expire, the prisoner prepared his own habeas petition and immediately filed it with the federal court.  The attorney's failure lost for his client what was likely his only opportunity for federal habeas review of the lawfulness of his conviction and death sentence.  Even under those remarkable facts, the Supreme Court did not immediately conclude that equitable

tolling was in order.  Rather, it remanded for further proceedings in light of the standard it announced.

The Fifth Circuit reversed a district court that applied equitable tolling in a death penalty case, despite the blame for the untimeliness landing squarely at the feet of defense attorneys and circuitous proceedings in the state courts.  Manning v. Epps, 688 F.3d 137 (5th Cir. 2012).  The Supreme Court rejected equitable tolling in a death penalty case where the delay was blamed on mental incapacity of the prisoner and a mistake by his counsel in calculating the filing deadline.  Lawrence v. Florida, 127 S.Ct. 1079 (2007).  There is no hint of such egregious facts in this case, and those were cases where tolling was rejected.

Petitioner missed the deadline by only two days, but the courts have "focused on the reasons for missing the deadline rather than on the magnitude of the tardiness."  Lookingbill v. Cockrell, 293 F.3d 256, 264-65 (5th Cir. 2002) (no tolling when prisoner missed the deadline by only four days).  The deadline is 365 days, not somewhere near 365 days.  In Ott, 192 F.3d 513-14, the prisoner filed his state habeas application one day before the expiration of the federal period, leaving only one day after completion of the state process to file a federal petition.  The prisoner's attorney mailed his federal petition on the first business day after receiving notice of the denial of the state application.  It was, by then, untimely, but the Fifth Circuit affirmed the trial court's decision to not invoke equitable tolling. Petitioner had 238 days from the state court's writ denial to prepare and file her federal petition. She instead took 240 days, and she offers no facts that would justify additional statutory or equitable tolling. Her petition is untimely.

Accordingly;

**IT IS RECOMMENDED** that the petition for writ of habeas corpus be **dismissed with prejudice** as untimely.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within seven (7) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b).  Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the

applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 11th day of July, 2013.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE